UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETER KOSLINSKI,

       Plaintiff,

v.                                                                            Case No. 1:11-cv-1233
                                                                      Hon. Hugh W. Brenneman, Jr.
COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## OPINION

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

       Plaintiff was born on June 29, 1958 (AR 114).[1] He alleged a disability onset date of October 23, 2006 (AR 114). Plaintiff completed two years of college and had previous employment as a CAD (computer aided design) modeler/designer, a 3D modeler and a Modeling operation manager (AR 125, 127). Plaintiff identified his disabling condition as trigeminal neuralgia, which arose when he sustained an injury to his trigeminal nerve during the course of a dental procedure on November 19, 2003 (AR 118). As a result of this condition, plaintiff suffers intense pain when performing mundane tasks such as brushing teeth or shaving (AR 118). Plaintiff states that the numerous episodes of pain and related doctor's appointments, affect his work attendance and performance, and that the treatments (nerve block medications) caused drowsiness, dizziness,

---

[1] Citations to the administrative record will be referenced as (AR "page #").

fatigue, blurred vision, nervousness, agitation, loss of balance and loss of coordination (AR 118). The ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on November 17, 2010 (AR 14-24). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of October 23, 2006 and that he met the insured status requirements under the Act through December 31, 2008 (AR 16). Second, the ALJ found that through the date last insured, plaintiff had severe impairments of trigeminal neuralgia, depression and chronic pain syndrome (AR 16). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 14). Specifically, the ALJ found that plaintiff did not meet the requirements of Listings 12.04 (affective disorders) and 12.07 (somatoform disorders) (AR 17-18).

The ALJ decided at the fourth step that, through the date last insured, plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b):

> reduced by occasional climbing of ramps/stairs and no climbing of ladders, ropes or scaffolds; occasional balancing and stooping; no kneeling, crouching, or crawling; the need to avoid concentrated exposure to extreme could/heat and vibration; moderate limitations in the ability to understand, remember, and carry out detailed instructions; moderate limitations in the ability to maintain attention and concentration for extended periods; moderate limitations in the ability to perform activities within a schedule, maintain regular work attendance, and be punctual within customary tolerances; and moderate limitations in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; where "moderate" means there is more than a slight limitation in this area but the individual is still able to function satisfactorily.

(AR 18-19). The ALJ further found that plaintiff could not perform any past relevant work (AR 22).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the national economy through the date last insured (AR 22-23).

Specifically, plaintiff could perform the occupations of assembler and inspector (AR 23).[2] Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from October 23, 2006 (the alleged disability onset date) through December 31, 2008 (the date last insured) (AR 23-24).

### III. ANALYSIS

Plaintiff raised three issues on appeal.

### A. The ALJ committed reversible error by not properly weighing the opinions of the consulting physicians in this case.

Plaintiff relies on the opinions expressed by Todd L. Helle, M.D., who performed a consultative examination of plaintiff on May 20 2010 (AR 306-07). After reviewing plaintiff's medical history, the doctor stated that plaintiff's "symptoms seem to be slowly getting worse" and noted that the neurological examination was remarkable only for a sensory disturbance to light touch and temperature, with guarding on the left side of his face below the eye involving both the cheek and jaw (AR 307). The doctor concluded that plaintiff had "chronic incapacitating left neuritic facial pain from a traumatic injection to the root of the trigeminal nerve at the base of the skull where the nerve exits the cranial cavity" (AR 307). The nerve damage left plaintiff with symptoms of permanent facial numbness, an ant-like crawling sensation, and frequent lightening-like jabs of pain to the face" (AR 307). The doctor confirmed the numbness to the lower left side of plaintiff's face on examination (AR 307). The doctor continued:

> Treatment to date has not been effective in controlling symptoms without undue side-effects. In addition, the stress of the facial condition has increased the

---

[2] The ALJ's decision did not identify any particular occupations in the regional economy. The court notes that the vocational expert testified that there were 9,000 assembler positions and 6,000 inspection positions in Michigan (AR 38-39).

>frequency and severity of a pre-existing migraine condition. The neuralgia and migraines are incapacitating in that they are severe enough to preclude [plaintiff] from working productively on the order of 1 to 2 weeks per month. Medications to date have not helped the facial symptoms at therapeutic doses that seem to have rendered him incapacitated from side effects.
>
>Although the facial pain, numbness, and lightening jabs of pain do not seem to limit [plaintiff]; the condition does significantly debilitate him cognitively. Untreated, the neurological symptoms would diminish his productivity by significantly altering his ability to stay focused on the employment task at hand. Treated with medication at doses to relieve the symptoms would in all likelihood cause cognitive side-effects also diminishing his productivity by significantly altering his ability to stay focused on the employment task at hand.

(AR 307).

The ALJ made only a brief reference to Dr. Helle's opinion, mentioning the exhibit number and concluding, "[h]owever, these records are from nearly 2 years after the DLI [date last insured]" (AR 20). While the ALJ set forth only a cryptic review of Dr. Helle's opinion, his point is well-taken , i.e., that Dr. Helle evaluated plaintiff's condition long after his date last insured. "[I]nsured status is a requirement for an award of disability insurance benefits." *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984). Since plaintiff's insured status for purposes of receiving DIB expired on December 31, 2008, he cannot be found disabled unless he can establish that a disability existed on or before that date. *Id.* "Evidence relating to a later time period is only minimally probative." *Jones v. Commissioner of Social Security*, No. 96-2173, 1997 WL 413641 at *1 (6th Cir. July 17, 1997), *citing Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987) (where doctor examined the claimant approximately eight months after the claimant's insured status expired, the doctor's report was only "minimally probative" of the claimant's condition for purposes of a DIB claim). Such evidence is only considered to the extent it illuminates a claimant's

6

health before the expiration of his insured status. *Jones*, 1997 WL 413641 at *1; *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).

Even if Dr. Helle's opinion addressed plaintiff's condition as it existed on or before December 31, 2008, non-treating physicians such as the doctor are not granted the presumption of controlling weight afforded to treating physicians under 20 C.F.R. § 404.1527(c). *See Coldiron v. Commissioner of Social Security*, 391 Fed. Appx. 435, 442 (6th Cir.2010), citing *Atterberry v. Secretary of Health & Human Services*, 871 F.2d 567, 572 (6th Cir.1989). While the ALJ's decision is required to give "good reasons" for the weight assigned a treating source's opinion, *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir.2004), this articulation requirement does not apply when an ALJ rejects the report of a non-treating medical source. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir.2007). Accordingly, plaintiff's claim of error will be denied.

> **B. The ALJ committed reversible error by failing to support his opinion with substantial (or even any) evidence.**

The record reflects that plaintiff received treatment since the date of the injury from physicians at West Michigan Oral and Maxillofacial Surgery, P.C., the University of Michigan Hospital and Health Systems, West Michigan Pain and InterCare Community Health Network (AR 207-28, 308-23). The record also includes opinions given by medical consultants, who examined plaintiff for purposes of a dental malpractice lawsuit and his DIB claim (AR 229-70, 280-307). However, the ALJ's decision does not provide a coherent discussion of plaintiff's medical history before or after the trigeminal nerve injury. The ALJ's decision identifies plaintiff's medical providers and consultants with one or two sentence summaries which are so vague that it is virtually

impossible to understand the medical provider's involvement or to differentiate between treating physicians and non-treating physicians.

The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *quoting Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir.1984). Here, the ALJ has failed to articulate an analysis of the evidence sufficient to allow a meaningful appellate review. This matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate the medical evidence, setting forth plaintiff's medical history in detail and explaining the medical evidence which supports his decision.

### C. The ALJ committed reversible error by failing to consider the evidence from lay witnesses.

Plaintiff contends that the ALJ failed to consider lay witness evidence from third parties. Plaintiff refers to an affidavit from Piet Geldhof, who employed plaintiff after the injury (AR 258-59). In his affidavit, Mr. Geldhof stated that in the time span of seven months plaintiff exceeded his vacation and sick time allotted for an entire year, that plaintiff exhibited problems with performance, concentration, mood swings and attitude, and that he was fired from the job for these reasons (AR 258-59). At the time, Mr. Geldhof was not aware of why these problems existed (AR

258-59). The court notes that the record includes a third-party function report from Kristin Posey (AR 148-55), which provides some evidence of plaintiff's daily activities.

The ALJ may use evidence of "other" sources to show the severity of a claimant's impairments and how those impairments affect the claimant's ability to work. 20 C.F.R. § 404.1513(d). These "other" sources include non-medical sources such as spouses, parents and other caregivers, siblings, other relatives, friends, neighbors and clergy. 20 C.F.R. § 404.1513(d)(4). Perceptible weight must be given to lay testimony when "it is fully supported by the reports of the treating physicians." *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983). *See also, Simons v. Barnhart*, 114 Fed. Appx. 727, 733 (6th Cir. 2004) ("[t]he testimony of lay witnesses, however, is entitled to perceptible weight only if it is fully supported by the reports of the treating physicians") (citing *Lashley*). Here, the ALJ did not mention any of the lay witness testimony. The court, however, cannot determine whether the ALJ committed error in failing to give weight to these witnesses, due to the ALJ's failure to adequately address plaintiff's medical history. The Commissioner should evaluate the testimony of the lay witnesses on remand.

### IV. CONCLUSION

The ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision shall be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate the medical evidence, setting forth plaintiff's medical history in detail and explaining the medical evidence which supports his decision.

The Commissioner should also re-evaluate the testimony of the lay witnesses in light of the medical evidence. A judgment order consistent with this opinion shall be issued forthwith.

Dated: March 28, 2013 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge